UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:16-CR-174-JVB-JEM |
| ) | |
| JOSE SANTIAGO, ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion for Compassionate Release [DE 334], filed by Defendant Jose Santiago on April 20, 2020. Defendant requests that the Court order compassionate release of Defendant due to his medical conditions and the current COVID-19 pandemic. For the reasons below, the Court denies the motion.

### BACKGROUND

On December 1, 2016, a Complaint was filed alleging that Defendant and two Co-Defendants violated 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Later, an Indictment, a Superseding Indictment, and, ultimately, a Second Superseding Indictment were filed. The Second Superseding Indictment, filed on April 21, 2017, charged Defendant with conspiracy to possess with intent to distribute crack cocaine and cocaine and conspiracy to distribute crack cocaine and cocaine in violation of 21 U.S.C. § 846 and with distribution of crack cocaine and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant was arrested on December 1, 2016, pursuant to an arrest warrant. He was released on bond pending trial.

On February 13, 2018, Defendant pled guilty to the § 846 count pursuant to a plea agreement. At the June 20, 2018 sentencing hearing, the Court dismissed the remaining count, and sentenced Defendant to 70 months imprisonment and three years supervised release on the § 846

count. Defendant was taken into custody after sentencing and is currently confined at the Federal Correctional Facility in Terre Haute, Indiana (FCI-Terre Haute).

On April 20, 2020, Defendant filed the instant motion, asking to be released from prison in light of the COVID-19 pandemic. On April 22, 2020, the Court issued an Order referring this matter to the Federal Community Defender to consider filing a supplemental brief in support of Defendant's request. Counsel appeared for Defendant, and, on May 29, 2020, counsel filed a supplemental brief. The Government did not file a response by its deadline to do so.

## DEFENDANT'S MEDICAL CONDITIONS

Defendant argues that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) would be appropriate because he "has a history of uncontrolled hypertension, high cholesterol, borderline diabetes and obesity." (Suppl. Br. 6, ECF No. 342). In support, Defendant cites, generally, 174 pages of medical records that he submitted to the Court. *See* (Untitled Document, ECF No. 344 (hereinafter "Med. R.")).

In the Court's review of the medical records, the Court found no diagnosis of high cholesterol or indication of Defendant being treated for such a condition, though it appears that blood tests showed above normal results of cholesterol, triglycerides, and cholesterol to HDL ratio, *see* (Med. R. 61, 142), though another test appears to report normal results, *see id.* at 147. Regarding "borderline" diabetes, the records indicate prediabetes and higher than normal A1C and glucose levels, *see id.* at 1, 3, 61, 62, but later records indicate that Defendant's prediabetes is in remission and that his A1C levels are in the normal range, *see id.* at 48, 128, 143. Regarding obesity, Defendant states that his BMI is 43.4. However, the most recent data on Defendant's weight is that on July 8, 2019, he weighed 287 pounds. *Id.* at 128. His height is given as 72 inches, *id.* at 32, which yields a BMI of 38.9, which is considered obese but not morbidly obese.

It is apparent from Defendant's medical records that he has hypertension. He has, at times, taken Lisinopril for this condition. *See, e.g.*, *id.* at 17, 24, 106, 130. At one point, however, Defendant indicated that he was not taking hypertension medicine, citing problems with getting his prescription refilled. *Id.* at 128. As recently as February of this year, Defendant had high blood pressure readings of 166/90 and 156/99. *Id.* at 155. The blood pressure readings with the lowest systolic number were 130/84 and 130/91. *Id.* at 6, 103. On at least two occasions, Defendant's diastolic number was below 80. *Id.* at 9, 95.

Defendant also indicates that he had asthma as a child, but the Court found nothing in his medical records to indicate treatment for any current symptoms, and the presentence report indicates that Defendant stated that he is no longer affected by it. (Final Presentence Investigation Rep. ¶ 72, ECF No. 306).

## ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A), the Court can grant a defendant's motion for compassionate release if the defendant complied with the administrative exhaustion requirement and the Court, having considered the factors found at 18 U.S.C. § 3553(a) as applicable, finds that extraordinary and compelling reasons warrant compassionate release and that compassionate release is consistent with the United States Sentencing Commission's applicable policy statements.

Defendant represents that he submitted a request for compassionate release to the warden at his correctional facility, that he was informed the request was denied, and that his case manager advised him to file a motion with the Court. From this information, the Court cannot discern whether Defendant satisfied the exhaustion requirement. To be sure, the Government, by failing to file a response, has not argued that the motion should be denied for failure to comply with the exhaustion requirement.

At this juncture, the Court must determine whether this exhaustion requirement is jurisdictional or merely a claim-processing rule. The Seventh Circuit Court of Appeals has not decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional, but it did decide that a failure to meet the requirements of § 3582(c)(2) did not prevent a court from having jurisdiction over a motion made under that subsection. *United States v. Taylor*, 778 F.3d 667, 670-71 (7th Cir. 2015). Because Congress did not mark the exhaustion requirement as jurisdictional, the Court finds that it is non-jurisdictional. *See id.* ("The general rule that has emerged is that 'when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non[-]jurisdictional in character.'" (quoting *Arbaugh v. Y & H. Corp.*, 546 U.S. 500, 516 (2006))); *United States v. Cox*, 4:18-cr-17, 2020 WL 1923220, at *3, --- F. Supp. 3d ---, --- (S.D. Ind. Apr. 21, 2020) (citing *Taylor* and finding § 3582(c)(1)(A)'s exhaustion requirement to be non-jurisdictional). Thus, the Court can adjudicate Defendant's motion regardless of whether the exhaustion requirement is satisfied. The Court need not determine Defendant's compliance with the requirement because the motion is denied for other reasons.

Congress tasked the Sentencing Commission with promulgating a policy statement on § 3582(c)(1)(A) and the definition of "extraordinary and compelling reasons." 28 U.S.C. § 994(t). The policy statement, found in the application notes to § 1B1.13 of the United States Sentencing Guidelines Manual, provides, as is relevant here, that a defendant's medical condition is an extraordinary and compelling reason when the defendant's serious physical or medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and the defendant is not expected to recover from the condition. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1.[1]

---

[1] The policy statement does not reflect the First Step Act's change to § 3582(c)(1)(A), which now permits a defendant to bring a motion for compassionate release.

As detailed above, Defendant points to hypertension, high cholesterol, "borderline" diabetes, obesity, and childhood asthma as medical conditions for the Court to consider in deciding this motion. However, the medical records show that Defendant's prediabetes is in remission, his BMI is below 40, and shows no diagnosis or treatment for high cholesterol. Further, Defendant's previous statement on his asthma is that he is no longer affected by it. Thus, the medical conditions for the Court to consider are Defendant's hypertension and obesity, as the other conditions either have not been shown to exist or are matters that Defendant has shown himself to be able to sufficiently provide self-care for at his current facility.

The CDC considers people with a BMI of 40 or higher to be at high-risk for severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 19, 2020). Defendant has neither argued nor presented medical or legal authority indicating how his obesity with a BMI of under 40 affects his susceptibility to either contracting or experiencing serious complications from COVID-19.

That leaves Defendant's hypertension, which has been shown by consistent elevated blood pressure readings during his incarceration. The CDC has indicated that people with serious heart conditions may be at higher risk because "COVID-19, like other viral illnesses such as the flu, can damage the respiratory system and make it harder for your heart to work. . . .[T]his can lead to a worsening of COVID-19 symptoms." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 19, 2020).

FCI Terre Haute, where Defendant is housed, has three active cases of COVID-19, has had one inmate die of COVID-19, and has had two inmates recover from COVID-19. *See* https://www.bop.gov/coronavirus/ (last visited June 19, 2020). COVID-19 is not restricted to places of incarceration. Defendant indicates that, if released, he intends to live with his girlfriend

who, at least as of February 13, 2018, lives in Lake County, Indiana. *See* ((Final Presentence Investigation Rep. ¶ 57, ECF No. 306). The county has had nearly 4,300 positive cases of COVID-19 and 232 COVID-19 deaths, at rates of 88.5 cases and 4.8 deaths per 10,000 people. https://www.lakecountyin.org/portal/group/health/page/coronavirus (last visited June 19, 2020). The specific city in which Defendant's girlfriend resides has had 177 cases and 14 deaths. It is unclear if Defendant would be at a greater risk from COVID-19 at FCI-Terre Haute or in Lake County.

Under the circumstances, the Court cannot say that Defendant's medical conditions and the present COVID-19 pandemic provide an extraordinary and compelling reason to warrant compassionate release. In denying Defendant's motion, however, the Court

> do[es] not mean to minimize the risks that COVID-19 poses in the federal prison system . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the Bureau of Prisons'] statutory role, and its extensive and professional efforts to curtail the virus's spread.

*United States v. Raia*, 954 F.3 594, 597 (3d Cir. 2020).

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion for Compassionate Release [DE 334].

SO ORDERED on June 19, 2020.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN, JUDGE  
UNITED STATES DISTRICT COURT